**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)                    *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KEON WARD,** | : | **Civil Action No.** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **HOMECENTRIS HEALTHCARE, LLC,** | : | |
| **Defendant.** | : | |

**CIVIL ACTION**

Plaintiff, Keon Ward (hereinafter "Plaintiff"), by and through his attorney, Koller Law, LLC, bring this civil matter against HomeCentris Healthcare, LLC (hereinafter "Defendant"), for violations of the Americans with Disabilities Act of 1990, as amended ("ADA"), the Pennsylvania Human Relations Act ("PHRA") and the Family and Medical Leave Act of 1993, as amended ("FMLA").  In support thereof, Plaintiff avers as follows:

**THE PARTIES**

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing in Folsom, PA.

3. Upon information and belief, Defendant HomeCentris Healthcare, LLC is a home healthcare company with a location at 2 Bala Plaza, Suite 300, Bala Cynwyd, PA 19004 and corporate headquarters located at 10 Crossroads Drive, Suite 110, Owings Mills, MD 21117.

4. Defendant is an entity engaged in an industry or activity affecting commerce which employs 50 or more employees in all of its offices for each working day during each of 20 or more calendar workweek in the current or preceding year.

5. At all times material hereto, Plaintiff was employed by Defendant for at least twelve hundred and fifty (1,250) hours of service during the twelve-month period prior to requiring leave.

6. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment.  In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

7. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer.  In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

8. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

9. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

10. The Court may exercise original subject-matter jurisdiction over the instant action pursuant

to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

11. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

12. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

14. Plaintiff exhausted his administrative remedies under the ADA and the PHRA.

15. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC"), digitally signed on December 12, 2025, alleging disability discrimination and retaliation against Defendant.

16. The Charge was assigned a Charge Number 531-2026-01176 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

17. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated May 11, 2026.

18. Prior to the filing of this action, Plaintiff notified the EEOC of his intent to proceed with a lawsuit in federal court.

19. Plaintiff files the instant Complaint within ninety (90) days of his receipt of his Right to Sue in this matter, as it relates to his federal law claims, and within two (2) years of the issuance of the Right to Sue in this matter as it relates to his PHRA claims.

20. Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

## PLAINTIFF'S EMPLOYMENT HISTORY

21. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

22. On February 2, 2022, Defendant hired Plaintiff in the position of Agency Director.

23. Plaintiff was well qualified for his position and performed well.

24. Plaintiff has the serious health condition of Generalized Anxiety Disorder ("GAD") which is considered to be a disability under the Americans with Disabilities Act of 1990, as amended ("ADA") and the Pennsylvania Human Relations Act ("PHRA").

25. The major life activities affected by GAD include, but are not limited to, eating and sleeping.

## PLAINTIFF REQUESTED A REASONABLE ACCOMMODATION IN THE FORM OF INTERMITTENT FAMILY AND MEDICAL LEAVE ACT LEAVE

26. On October 21, 2024, based on his therapist's and psychologist's recommendations, Plaintiff requested a reasonable accommodation in the form of Intermittent Family and Medical Leave Act ("FMLA") leave by email to Defendant's Human Resources Director, Sierra Morgan, and Vice President of Operations, Jason Hafer. Plaintiff requested an intermittent reduced schedule of working three (3) days per week rather than five (5) days per week, as needed. The request was for a twelve (12)-week period of approved

intermittent FMLA leave, allowing Plaintiff to take one (1) to two (2) days off per week as medically necessary.

27. This request was made pursuant to the ADA and the FMLA.

## PLAINTIFF'S SUPERVISOR DISCOURAGED HIS USE OF APPROVED INTERMITTENT FMLA LEAVE

28. Rather than engage in the interactive process, Jason Hafer, VP of Operations, discouraged Plaintiff from utilizing Intermittent FMLA leave and told him to "just use PTO instead," despite his statutory entitlement to protected leave.

## DEFENDANT FREQUENTLY INTERFERED WITH PLAINTIFF'S INTERMITTENT FMLA LEAVE

29. During his periods of approved Intermittent FMLA leave, Plaintiff used his protected time off for medically necessary purposes, including attending therapy sessions twice weekly, attending psychiatric appointments, managing his medication, and addressing episodes of panic attacks and related symptoms. Despite Plaintiff's approved leave, Defendant's Client Relationship Managers, Community Outreach Coordinators, and Payroll Director interfered with his time off by regularly contacting him on a daily basis through emails, Teams messages, and phone calls regarding work matters, creating stress, exacerbating his symptoms, and undermining the very purpose of the leave.

## DEFENDANT HIRED AN EXTERNAL REPLACEMENT FOLLOWING PLAINTIFF'S REQUESTED INTERMITTENT FMLA LEAVE

30. Shortly after Plaintiff requested Intermittent FMLA leave, Defendant hired an external replacement, a non-disabled female, for the Regional Director position in November/December 2024, despite Plaintiff's strong performance and clear track record

5

of success. Although this individual held a different title, her responsibilities substantially overlapped with Plaintiff's duties as Agency Director.

31. Plaintiff had no notice that Defendant intended to replace him or substantially reassign his duties; the timing strongly suggests retaliatory and discriminatory motive.

## PLAINTIFF WAS REQUIRED TO GO OUT ON CONTINUOUS FMLA LEAVE DUE TO DEFENDANT'S CONDUCT

32. Due to Defendant's interference with his protected leave and increasing hostility from management, Plaintiff's disability symptoms worsened.

33. As a result, Plaintiff was forced to take continuous FMLA leave beginning on or about April 4, 2025. Plaintiff formally applied for continuous FMLA leave and submitted his request to Gary Murray, who succeeded Ms. Morgan as HR Director, which was approved by Mr. Murray.

34. Plaintiff was out of work from April 4, 2025, until his anticipated return to work date was July 1, 2025.

35. Plaintiff was scheduled to return to work on or about July 1, 2025.

## THE HUMAN RESOURCES DIRECTOR FALSELY CLAIMED THAT PLAINTIFF'S TIME RECORDS WERE INACCURATE AND THAT HE HAD BEEN STEALING TIME

36. When Plaintiff contacted Human Resources Director Gary Murray regarding confirmation of his available leave, on April 3, 2025, during an in-person conversation in Plaintiff's office at Defendant's Upper Darby location, with Regional Director Fermina Maddox present, Mr. Murray falsely insinuated that Plaintiff's time records were inaccurate and accused Plaintiff of "stealing time." Specifically, Mr. Murray stated that

Plaintiff was stealing time by failing to properly record his time in the Paylocity payroll system and that Plaintiff would not be paid any remaining PTO reflected in his Paylocity balance as he began his FMLA leave. Mr. Murray further stated that no one was maintaining Paylocity and that the system was inaccurate. Plaintiff explained that all time off he had taken was properly submitted through Paylocity and approved by Jason Hafer. Following a heated conversation, Mr. Murray ultimately agreed that Plaintiff would retain his accrued PTO. Plaintiff later followed up regarding the issue by email, and Mr. Murray provided a screenshot confirming Plaintiff's PTO balance of 103.38 hours, which Plaintiff had earned and was eligible to receive.

37. Defendant's conduct during this period reflects escalating retaliation and a deliberate effort to manufacture grounds for termination.

## DEFENDANT HAD ALREADY REPLACED PLAINTIFF AND MADE NO PLANS FOR HIS RETURN

38. On June 4, 2025, Plaintiff and Regional Director Fermina Maddox met for lunch to discuss Plaintiff's anticipated return to HomeCentris following his continuous FMLA leave. During this conversation, Ms. Maddox informed Plaintiff that Defendant had already hired an individual to sit in Plaintiff's office and oversee the operations of the Upper Darby and Bala Cynwyd offices that Plaintiff had managed as Agency Director. Ms. Maddox stated she was unsure where Plaintiff would fit in upon his return. Ms. Maddox further confirmed that no discussions had taken place among Gary Murray, Jason Hafer, or CEO Matthew Auman regarding Plaintiff's return to employment.

## DEFENDANT TERMINATED PLAINTIFF

On June 27, 2025, just days before his scheduled return from continuous FMLA leave,

Defendant abruptly issued Plaintiff a termination letter via overnight delivery, alleging vaguely that "things were being done incorrectly" and that his subordinates were performing their duties improperly.

39. Prior to Plaintiff exercising his rights under the ADA and the FMLA, Defendant had not raised any concerns of his performance or the work of his subordinates.

40. In fact, Plaintiff had been repeatedly praised and placed on a promotion track.

41. Defendant conducted no investigation into the alleged performance issues and provided no examples, evidence, or explanation, revealing these assertions to be pretext for disability discrimination and retaliation.

42. Furthermore, upon information and belief, Defendant replaced Plaintiff with a less qualified, non-disabled individual.

43. The articulated reason for Plaintiff's termination was pretextual.

44. Defendant discriminated against Plaintiff on the basis of disability, failed to engage in the interactive process, interfered with his rights under the FMLA and retaliated against him for exercising his rights under the FMLA leave as an accommodation for his disability and for complaining about disability discrimination in violation of the ADA, the PHRA and the FMLA.

45. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

## COUNT I – DISABILITY DISCRIMINATION

## <u>AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED</u>

46. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

47. Plaintiff is a "qualified individual with a disability" as that term is defined under the

ADA because Plaintiff has, or had at all times relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

48. Plaintiff was qualified to perform the job.

49. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

50. Circumstances indicated that Plaintiff's disability was the reason for the adverse employment action.

51. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

52. Plaintiff's disability motivated Defendant's decision to take adverse actions against Plaintiff.

53. The purported reason for Defendant's decision is pretextual.

54. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

55. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

56. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

57. Defendant's conduct was willful or with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of

this Complaint, *infra*.

## COUNT II – DISABILITY DISCRIMINATION

## <u>PENNSYLVANIA HUMAN RELATIONS ACT</u>

58. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

59. Plaintiff is a "qualified individual with a disability" as that term is defined under the PHRA because Plaintiff has, or had at all times relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

60. Plaintiff was qualified to perform the job.

61. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

62. Circumstances indicated that Plaintiff's disability was the reason for the adverse employment action.

63. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

64. Plaintiff's disability motivated Defendant's decision to terminate Plaintiff.

65. The purported reason for Defendant's decision is pretextual.

66. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

67. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

68. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered

damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – RETALIATION

### AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

69. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

70. Plaintiff engaged in activity protected by the ADA.

71. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

72. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT IV – RETALIATION

### PENNSYLVANIA HUMAN RELATIONS ACT

73. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

74. Plaintiff engaged in activity protected by the PHRA.

75. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

76. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT V – INTERFERENCE

## FAMILY AND MEDICAL LEAVE ACT OF 1993, AS AMENDED

77. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

78. The FMLA declares it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" any right provided by the FMLA. 29 U.S.C. 2615(a)(1).

79. At all times material, Defendant knew, or should have known, of Plaintiff's need for FMLA leave to care for his own serious health condition.

80. Defendant acted in bad faith by interfering with Plaintiff's rights under the FMLA.

81. Defendant knowingly, intentionally, willfully and/or recklessly acted in disregard of the duty to grant Plaintiff's FMLA-related request for leave.

82. Defendant's aforementioned actions violate 29 U.S.C. § 2615(a)(1) of the Family and Medical Leave Act in that the employer cannot "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" any right provided by the FMLA. 29 U.S.C. 2615(a)(1).

83. As a direct and proximate result of Defendant's unlawful interference with Plaintiff's rights under the FMLA, Plaintiff has been deprived of economic and non-economic benefits including, but not limited to lost wages, pain and suffering, mental anguish, humiliation, loss of fringe benefits, disruption of his personal life and loss of enjoyment of the ordinary pleasures of life.

12

84. Plaintiff demands judgment in his favor against Defendant for all available equitable relief including, but not limited to: unpaid leave up to the maximum permitted by the FMLA including but not limited to doubling the damages proven inclusive of all wages, salary, employment benefits or other compensation denied or lost.

85. Plaintiff further demands judgment in his favor against Defendant for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those sums, as liquidated damages under § 2617(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against Defendant and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the Family and Medical Leave Act of 1993.

**WHEREFORE**, Plaintiff demands compensatory and liquidated damages in addition to counsel fees and costs.

### COUNT VI – RETALIATION

### FAMILY AND MEDICAL LEAVE ACT OF 1993, AS AMENDED

86. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

87. Pursuant to 29 U.S.C. § 2611(2)(A) and 29 U.S.C. § 2612(a)(1)(C), Plaintiff was eligible for leave under the FMLA.

88. At all times material, Defendant knew, or should have known, of Plaintiff's need for FMLA Leave to care for his own serious medical conditions.

89. Plaintiff gave Defendant sufficient information to allow it to understand that he needed leave for FMLA-qualifying reasons.

90. The retaliation occurred in the form of the continued implementation of a policy that discourages and interferes with Plaintiff's right to invoke his federally protected rights

under the FMLA.

91. As a result of Plaintiff's attempt to invoke his FMLA rights, by requesting and utilizing his FMLA rights, Defendant has retaliated against Plaintiff by terminating his employment.

92. Defendant's motivation for retaliating against Plaintiff was connected causally to Plaintiff's FMLA leave.

93. Defendant has acted in bad faith by retaliating against Plaintiff in violation of the FMLA.

94. As a direct and proximate result of Defendant's discharge of Plaintiff, Plaintiff is and was deprived of economic and non-economic benefits resulting from Defendant's willful and/or non-willful actions including but not limited to: loss of back pay, loss of increase in salary, loss of benefits preceding Plaintiff's filing of the lawsuit, cost of providing care, and double liquidated damages under the FMLA for violations not made in good faith.

95. Plaintiff demands judgment against Defendant for all available equitable relief including, but not limited to: reinstatement to job position, full restoration of all leave and health benefits, to which Plaintiff was entitled, and any additional unpaid leave up to the maximum permitted by the FMLA including but not limited to doubling the damages proven inclusive of all wages, salary, employment benefits or other compensation denied or lost.

96. Plaintiff further demands favorable judgment against Defendant for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those sums, as liquidated damages under §107(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against Defendant and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the FMLA.

14

**WHEREFORE**, Plaintiff demands compensatory and liquidated damages in addition to counsel fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Keon Ward, requests that the Court grant him the following relief against Defendant:

(a)   Compensatory damages;

(b)   Punitive damages;

(c)   Liquidated damages;

(d)   Emotional pain and suffering;

(e)   Reasonable attorneys' fees;

(f)   Recoverable costs;

(g)   Pre and post judgment interest;

(h)   An allowance to compensate for negative tax consequences;

(i)   A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADA, the PHRA and the FMLA.

(j)   Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k)   Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l)   Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## **JURY TRIAL DEMAND**

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

RESPECTFULLY SUBMITTED,

KOLLER LAW, LLC

Date: August 10, 2026             By:   */s/David M. Koller*
                                  David M. Koller, Esquire
                                  Jordan D. Santo, Esquire
                                  2043 Locust Street, Suite 1B
                                  Philadelphia, PA 19103
                                  215-545-8917
                                  davidk@kollerlawfirm.com
                                  jordans@kollerlawfirm.com

                                  *Counsel for Plaintiff*

16